# Anderson *v.* Thomas *et al.*

*Bill in Equity by Ward to subject Estate of deceased Surety of Guardian in hands of Administrator.*

1. *Bill in equity; when ward may maintain to reach estate of surety of guardian in hands of administrator.*—A ward whose guardian was indebted on final settlement, may after return of "no property" as to him, maintain a bill against the administrator and distributees of a deceased surety of the guardian, to subject to the satisfaction of the decree, money remaining in the hands of the administrator, derived from a sale of the surety's property, for which judgments had been rendered against him on final settlement in favor of the distributees ; and it is not ground of demurrer that complainant did not pray an injunction to prevent the money being paid over, or proceed as in the case of equitable attachments.

2. *Distributees, rights of.*—Where, in such a case, the property of the surety was all sold, (without making any reservation or exemption to the extent allowed by law), and converted into money, the equity of the minor distributees to the money, to the extent which the statute allowed an allotment in money in lieu of specific exemptions, is equal to that of a creditor of the intestate, and having a legal advantage, a court of equity will not allow their rights to be disturbed except as to the surplus remaining after deducting the amount allowed in lieu of exemptions.

APPEAL from Chancery Court of Greene.

Heard before Hon. A. W. DILLARD.

The opinion states the case.

E. MORGAN, for appellant.

W. & J. WEBB, *contra.*

MANNING, J.—Complainant below, who is the appellant here, being a minor, Thomas C. Thomas, one of defendants, was appointed his guardian on the 3d of January, 1861; and on the final settlement of his guardianship, October 20, 1870, he was ascertained and adjudged to be indebted to complainant, who was then of age, in the sum of $587 12-100, for recovery of which writs of execution were issued and returned "no property found," the guardian being insolvent. James M. Jones was a surety on the bond of Thomas for his faithful guardianship; and all the co-sureties are now either wholly insolvent, or dead, and their estates insolvent.

Jones died in 1863, leaving real and personal estate, and three minor children named Marcellus, James J., and Deubema, respectively, who are still minors. They are made defendants to this bill, as is also Robert B. Crawford, as administrator *de bonis non* of their father's estate.

At a final settlement by Crawford as administrator, August 8, 1870, it was found he had in hand, after paying all debts of the estate that were known to exist or had been presented, $1,416 12-100, for one-third of which, $472 04-100, a decree against him was rendered in favor of each of the three minor children of James M. Jones, deceased; and the money being still in the hands of the administrator, this suit was brought July 6, 1871, to subject it to the satisfaction of the decree in favor of complainant against his guardian Thomas, for whom the deceased Jones was a surety.

It is settled law, that notwithstanding the death of Jones, his estate remained responsible for the faithful discharge by Thomas, afterwards, of his duties as guardian. This point was determined in *Moore v. Wallis*, 18 Ala. 458.

It was also decided in the same case, that a bill in equity would lie in favor of a late ward against his guardian, who had been found on settlement indebted to him, and against the distributees and heirs of a deceased surety on the guardianship bond, whose estate had been administered and distributed, and against the guardian of the minor distributees, into whose hands their portions of the proceeds of the estate had come.

The obvious reason for this decision is, that the moneys or property sought to be subjected to the payment of the debt due to the complainant, legally belong, after distribution, to persons who do not owe the debt; and it is only by showing an equity, which a court of law can not take cognizance of, that the complainant can maintain his right to have them so appropriated.

The only difference in this particular between the case cited and the present one, is, that the money remaining of the estate of Jones is still in the hands of the administrator *de bonis non* of that estate. He is not entitled, however, to hold it as administrator. It has been adjudged to belong to the minor defendants in this cause by a decree irrevocable by the court which rendered it, and is thus no longer under administration therein as the estate of their deceased father, but has been allotted to them. The cause is, therefore, one of equity jurisdiction and the demurrer is not sustainable.

The objection set up in the demurrer, that no injunction was applied for to restrain the administrator, Crawford, from paying over the portions adjudged to the minor defendants,

and the objection insisted on in argument that complainant should have proceeded as prescribed in the enactments relative to equitable attachments, might have been well enough urged by Crawford, the administrator, if upon the running of writs of execution against him he had been compelled to satisfy and discharge the decrees. The injunction and attachment are mere instruments of the law, which complainant might have used if he had chosen to do so in order the better to prevent his suit from being fruitless, or from being retarded in its progress to a conclusion. It was not necessary to employ them in order to give the court jurisdiction.

The money in the hands of Crawford, the administrator, for which the decrees of the probate court had been rendered against him, was shown to be a balance of the price for which the lands of his intestate had been sold; and they were sold by order of the court, upon the petition of the administrator, for the purpose of paying debts of the estate. Personal property had also been sold, to a large amount, by his predecessor for the same purpose; and no homestead had, according to the provisions of the exemption law, been reserved for the three infant children, the only family left by the deceased surviving him; nor had the personal property, to which they were entitled under the law in force when their father died, been preserved for or set apart to them. All this property, real and personal, had been sold; and after the payment of the debts of deceased, and when it was supposed that they were all paid, a final settlement was had of the estate, and the entire balance remaining ascertained to be the sum for which said decrees were rendered.

On behalf of the minors, it was claimed, and by the court it was decided, that they were entitled to have reserved out of the amount of the decrees the sum of $500, the value according to the statute, of the homestead which the law declared should be exempt from sale, for them; and also the value of the personal property in like manner exempted from administration for their benefit. The value of this personal property was ascertained by a reference to and report of the register as master.

In *Rottenberry. v. Pipes*, 53 Alabama, p. 447, we have decided that under the law relating to the exemption of a homestead in favor of the family of a deceased debtor, as it existed before the amendatory statute of December 9, 1864, was enacted (now incorporated in § 2061, chapter 6, of the Revised Code) when the homestead property was not selected and set apart before a sale of the realty by the administrator to pay the debts of the deceased, his widow could not

[Anderson v. Thomas et al.]

maintain an action against the purchaser of it, to have her homestead out of the lands he had bought and paid for.

But the question presented in this record is quite a different one. The present proceeding does not seek to overturn a title acquired in good faith, under a judicial sale made by a court with jurisdiction over the subject matter. The question is, whether, after the decree of a probate court has been rendered upon the final administration of an estate, ascertaining a balance due to infant distributees, arising wholly or in a large part, from the sale of property which the law declared should be exempt in their favor as preferred distributees, from the claims of creditors, a creditor may come into a court of equity and have its aid to take this money away from the distributees?

A case somewhat like this arose in New York, where a similar law existed, allowing to the widow certain articles of personal property belonging to her deceased husband's estate, and others in addition, to the value or amount of one hundred and fifty dollars, as provided by a subsequent law. In the administration of an estate no exemption was allowed by the executors or appraisers, under either statute, in favor of the widow; "and the executors subsequently sold at public auction the property set forth in the inventory." Application having been made by the widow to the surrogate for redress, he "decreed the executors to pay to her the sum of $150, in lieu of her right to the exempt property to which she was entitled." The executors appealed to the supreme court, where the decree was affirmed, and then to the court of appeals of New York, where also it was affirmed. The latter court, in its opinion, says: "The proceeds of this sale in the hands of the executors, constituted a trust in favor of the widow, to the extent of her interest in or claim upon the property of the testator, under the statute. She might affirm the sale, and it would be the duty of the executors, as trustees, to pay over the avails to the legal and equitable proprietor. If they refused, the surrogate, in virtue of his power to control their conduct and to administer justice in all matters relating to the affairs of deceased persons, could compel their obedience. This he has done by his decree, and no objection is perceived to the exercise of this power." *Sheldon v. Bliss*, 4 Seld. (8 N. Y.) Rep. 31.

This doctrine of a trust is as applicable to the real estate so disposed of and situated as to personalty. And although the balance, for which the decrees before us are rendered, was entirely derived from the proceeds of the real property, yet, as it has been increased by the proceeds of the exempt personal property which was applied to the payment of the

debts, the infant distributees are entitled to have the value of the latter property, as well as the allowed value of the homestead, out of that balance.

Under the circumstances, the minor distributees have at least an equal equity and the legal advantage. And this advantage, to the extent of their equity, a court of equity will respect and maintain, and so exercise its power as to protect them therein, while it will cause all beyond the amount to which these defendants have this equity, to be applied toward satisfying the debt to complainant.

We find no material error in the decree of the chancellor, and it is affirmed.